# The Downey Law Firm, LLC

Philip A. Downey, Esq.*
P.O. Box 1021
Unionville, PA 19375
Downeyjustice@gmail.com
Phone:610/324-2848
Fax: 610/813-4579
(*admitted to practice in Pennsylvania, and the District of Columbia)

Cory G. Lee, Esq.
Of Counsel
9595 Wilshire Blvd., Suite 900
Beverly Hills, CA 90212
downeyjusticelee@gmail.com
Phone: (213) 291-3333
Fax: (610) 813-4579

February 2, 2017

**VIA ELECTRONIC SERVICE AND EMAIL**

Hon. Stanley A. Boone
United States Magistrate Judge
United States District Court for the Eastern District
of California

**RE: Talavera v. Sun Maid Growers of California, et al., Case No. 1:15−CV−00842−AWI−SAB**
**Joint Letter Brief Addressing Discovery Dispute**

To the Honorable Court:

Pursuant to the Court's guidelines regarding Informal Telephonic Conferences Regarding Discovery Disputes, the Parties offer this Letter Brief regarding their discovery disputes related to Plaintiff's Requests for Production of Documents, set One:

1. Defendant's production plants subject to discovery;
2. whether all punch, time and pay records should be produced or whether a sample is warranted; and
3. Plaintiff's request for an extension to accommodate an opt-out notice.

In addition, the Parties seek the Court's assistance in resolving the scope of the matters outlined on Plaintiff's 30(b)(6) deposition notice of Sun-Maid.

## MEET AND CONFER EFFORTS

The Parties have extensively met and conferred on these discovery disputes, including: Plaintiff's November 23, 2016 meet and confer letter; Defendant's December 6 response email; and the Parties December 21 telephonic conference addressing these issues. The Parties have continued to communicate via e-mail regarding these issues.

## PARTIES ARGUMENTS REGARDING DISCOVERY DISPUTES

### 1. Production Plants Subject to Discovery

<u>Plaintiff's Position</u>- the Court is charged with finding, amongst other findings, whether Plaintiff shares common questions of law or fact with the proffered class under FRCP 23. As the class stated in the operative Complaint is "[a]ll individuals who . . . have been employed, as nonexempt hourly employees at Defendants' food processing facilities in California," the asserted class encompasses all production facilities in California. As such, policies related to all of Defendant's California employees are relevant to the pre-certification inquiry.

While decided under the conditional certification standard under the FLSA, the Court, in its March 18, 2016 Order Granting Plaintiff's Motion for Conditional Certification ("Conditional Certification

Order"), recognized the common questions of law or fact presented here, noting that Sun Maid operates a main processing plant and three satellite processing plants, the Court conditionally certified a class including all nonexempt hourly employees at Defendant's food processing facilities in California. (See Conditional Certification Order at p.2:4-6, 18-20; 6:13.) In fact, the Court found that "the two declarations and documents submitted by plaintiff constitute more than 'unsupported assertions' and do show that plaintiff and potential class members "[may have been] together the victims of a single decision, policy, or plan. [citation]" (Id. at p.5:26-28.)

Indeed, specifically, Plaintiff presented evidence that Sun-Maid's GMP Program "applies to employees, temporary employees, contractors, visitors, growers, truck drivers and all other authorized personnel entering any of the production areas at any Sun-Maid facility." See Docket No. 19. Similarly, Sun-Maid's "New Employee GMP & Safety Orientation" required sanitary gear to be worn by all employees at Sun-Maid's facilities. Id.

Additionally, Sun-Maid's "Plant Employee Handbook of Company Policies" contains similar GMPs and Safety Policies pertaining to "all plant employees" regarding hair control, hand cleanliness, safety equipment, hearing protection, and eye protection. Id. Sun-Maid's "Sanitation Annual Refresher & MSDS Training 2015" requires similar personal protective gear for employees using sanitation chemicals. Id.

Thus, Plaintiff is entitled to discovery related to all of Defendant's production facilities in California.

<u>Defendant's Position</u>- Sun-Maid already has produced all policies and collective bargaining agreements governing all of its employees, regardless of location. The only discovery remaining at issue thus concerns Plaintiff's request for production of time and pay records for all workers at Sun-Maid, including employees and non-employee temporary workers, which is an enormously burdensome request as it covers over 5000 workers during the relevant time period.[1]

The scope of pre-class certification discovery is generally limited, with Plaintiff required to make a prima facie showing that the class action requirements of FRCP 23 (numerosity, commonality, typicality and adequacy of representation) are met. *Wilson v. Conair Corp.,* 2015 U.S. Dist. LEXIS 57654 (E.D. Cal. 2015). In this case, Plaintiff was an employee of a temporary services agency (Randstad US. L.P., dba Placement Pros) and was assigned by Placement Pros to perform temporary work at Sun-Maid's Kingsburg plant on 18 days in August and September 2014. Sun-Maid's regular employees are governed by collective bargaining agreements between Sun-Maid and a number of unions, including Teamsters Local 431 which represents the vast majority of Sun-Maid's employees. Plaintiff has made no showing that he – an 18-day temp who worked at one facility – can meet the FRCP 23 factors to justify broad discovery of time and pay records for every worker at every facility owned by Sun-Maid.[2]

Plaintiff argues that the Court conditionally certified his FLSA collective action. In fact, as a result of the Court's conditional certification of the FLSA claims, notice went out to the entire putative class and provided the opportunity to opt in to the litigation. 142 individuals responded that they wished to opt in, and their contact information was provided to both parties. Discovery in a FLSA collective action is limited to those individuals who wish to participate in the litigation. Given Plaintiff's lack of showing to justify discovery concerning every single worker, and the fact that the parties know which workers are interested in participating in the litigation, Sun-Maid proposes that it produce time and pay records from the relevant time period for those 142 individuals, to the extent it maintains such records.

---

[1] In addition, Sun-Maid does not maintain typical time and pay records for temporary workers, whose actual employers would maintain such documents, and only has limited information concerning such workers which is difficult to reconstruct.

[2] Courts often, in fact, limit precertification discovery of wage statements and time records to the facility where the named plaintiff was employed and only require production of a sample of such records. *See, e.g., Salgado v. Land O'Lakes, Inc.* 2014 U.S. Dist. LEXIS 175158 (E.D. Cal. 2014).

**2. Production of Punch, Time and Pay Records**

Plaintiff's Position- Defendant has failed to adequately support the allegation that production of all time, punch and pay records is unduly burdensome and oppressive, especially in light of Plaintiff's allegations which directly implicate time and punch records such as Plaintiff's late and short meal break claims, and Plaintiff's donning and doffing claims. Defendant has not provided any facts in its responses demonstrating that the time or expense involved in responding to the request is unduly burdensome. In fact, that Defendant provided an initial sample of time and pay records in Excel format, in advance of Plaintiff's FLSA Conditional Certification Motion, implies that there is no burden associated with producing all of the requested records. Indeed, it may be more labor intensive to select certain records from within the electronic records for copying and production than to simply produce all relevant records for the class period.

Defendant's Position- Sun-Maid's position and proposal on time and pay records is outlined above.

**3. Extension to the Fact Discovery Cut-Off**

Plaintiff's Position- Plaintiff requests a 120 day extension to the fact discovery cut-off deadline, currently set for February 10, 2017. Aside from additional discovery responses promised and due from Defendant, the Parties have agreed to an opt-out procedure for disclosure of class member contact information (in a December 21st conference call followed by Defendant's confirming email). Plaintiff estimates that the opt-out process will take a minimum of 60 days to negotiate and execute the opt-out mailing. Plaintiff would then require an additional 60 days to contact class members and potentially conduct follow-on discovery. This process cannot begin until after decision on issue number 1, above.

Additionally, should the Court determine that all of Defendant's California production facilities are subject to discovery pursuant to issue 1, above, Defendant will likely have to concurrently amend their discovery responses to include information related to additional production facilities. Any amendment may require follow-on fact discovery, depending on the content of the amendments.

Defendant's Position- Sun-Maid does not believe that a four-month extension of the discovery cut-off is warranted in this case. Sun-Maid responded to Plaintiff's discovery in August 2016. Plaintiff did not notify Sun-Maid that it had any issue with the responses until a meet and confer letter received by Sun-Maid at the end of November. Sun-Maid responded promptly to that letter and attempted in good faith to work with Plaintiff to reach a compromise on the discovery. Sun-Maid has agreed to modify a few discovery responses, which can be done within a week, and can produce time and pay information for the 142 individuals noted above within just a few weeks. Moreover, the parties have had the contact information of the 142 individuals who expressed interest in joining the lawsuit since early September, and Plaintiff has been able to contact those individuals and conduct any discovery as to them since that date. There is no basis for the disclosure of any additional contact information for putative class members, even through use of an opt-out procedure, given that the universe of individuals who have consented to their private contact information being shared is known.[3] Thus, there is no need to delay this litigation any further. Sun-Maid would consent to a one-month extension, to allow it time to produce the limited information discussed herein.

[3] The California Constitution, Article I, Section I, provides a right to privacy to California citizens. Discovery of information containing material within zones of privacy, such as personnel information, must be afforded higher scrutiny than the ordinary relevancy test. *See Puerto v. Superior Court*, 158 Cal.App.4th 1242 (2008). Plaintiff must demonstrate a compelling need for discovery that outweighs the privacy right. *See United States EEOC v. ABM Indus.*, 2008 U.S. Dist. LEXIS 105649 (E.D. Cal. 2008) The parties here discussed the use of an opt-out procedure to alleviate Sun-Maid's privacy concerns, but in fact the whole putative class received notice of the lawsuit through a third-party administrator, and an opportunity to opt-in, and 142 employees indicated their interest in doing so. Thus there is no reason to repeat the process again, particularly at the end of the discovery period.

**4. Plaintiff's 30(b)(6) Deposition Notice**

Defendant's Position- Plaintiff served a 30(b)(6) deposition notice to Sun-Maid that requests the corporate representative to testify as to 37 different matters. After meeting and conferring, Plaintiff agreed to withdraw two matters and narrowed the scope of three others. Sun-Maid, however, continues to believe that the scope of those three matters is improper for a corporate deposition in this case. The three matters at issue are: "28. Information regarding GMP violations related to donning or doffing or the wearing or omission of sanitary gear at any of YOUR facilities in California during the RELEVANT TIME PERIOD; 29. Information regarding HACCP violations related to donning or doffing or the wearing or omission of sanitary gear at any of YOUR facilities in California during the RELEVANT TIME PERIOD; and 30. Information regarding SSOP violations related to donning or doffing or the wearing or omission of sanitary gear at any of YOUR facilities in California during the RELEVANT TIME PERIOD."

This putative class action seeks unpaid wages for time spent donning and/or doffing and failure to provide legally-compliant meal periods. The matters designated in a 30(b)(6) deposition notice must be tied to the claims at issue in the case and structured to address questions related to those claims. Information regarding violations of policies concerning donning and doffing sanitary gear has no bearing on those wage and meal period claims. Moreover, the only way to educate a corporate representative about policy violations by employees would be to review the thousands of personnel files maintained by the company for all current and former employees and ascertain if an employee was disciplined. This is far too onerous a burden particularly where the relevancy of safety violations to failure to pay wages has not been shown. In addition, additional topics included in the deposition notice relate to the company's policies with respect to donning and doffing sanitary gear (including when workers are required to do so), how employees are paid for such time, the requirements to don and doff during meal and rest breaks, investigations by government agencies into violations of these policies, and trainings of workers on complying with these policies. Sun-Maid's corporate representative will be fully prepared to testify on those topics, which should be more than adequate for purposes of this wage/hour class action.

Plaintiff's Position- The three matters at issue, all involving discipline for food safety violations related to donning or doffing or the wearing or omission of sanitary gear, may directly address the issues in this case. Without having seen any discipline records, Plaintiff anticipates several types of discipline discoverable which are directly relevant to this case. First, any discipline related to a worker failing to wear a piece of sanitary gear evidences what, where, and when such sanitary gear must be worn. This evidence is important because the location of donning and doffing of gear implicates whether the gear is donned before or after clocking in. Second, discipline related to workers arriving at the production area late because they were donning gear may both directly evidence the time needed to don the gear and where that donning must occur. This would address, amongst other issues, a potential defense that the time required for donning and doffing was *de minimus*. Finally, the timing and frequency of any discipline may evidence whether workers were given enough time to don their gear and arrive at the production areas or whether the discipline process was used to force employees to don their gear prior to clocking in.

Plaintiff seeks only that Defendant comply with its obligations under the Code and relevant caselaw and prepare its designee on these issues to the extent matters are reasonably available, whether from documents, past employees, or other sources. *See United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996).

Very truly yours,

/s/ Cory G. Lee, Esq.

/s/ Sandra L. Rappaport