# The Downey Law Firm, LLC

Philip A. Downey, Esq.*
P.O. Box 1021
Unionville, PA 19375
Downeyjustice@gmail.com
Phone:610/324-2848
Fax: 610/813-4579
(*admitted to practice in Pennsylvania, and the District of Columbia)

Cory G. Lee, Esq.
Of Counsel
9595 Wilshire Blvd., Suite 900
Beverly Hills, CA 90212
downeyjusticelee@gmail.com
Phone: (213) 291-3333
Fax: (610) 813-4579

February 8, 2017

**VIA ELECTRONIC SERVICE AND EMAIL:**

Hon. Stanley A. Boone, U.S.M.J.
U. S. District Court, E.D. Cal.
Robert E. Coyle United States Courthouse
2500 Tulare Street, Sixth Floor, Courtroom 9
Fresno, CA 93721

**RE: Talavera v. Sun Maid Growers of California, et al., Case No. 1:15−CV−00842−AWI−SAB Letter Brief Addressing Belaire-West Opt-Out Notice for Class Member Contact Information and Continuance of Fact Discovery Deadline**

To the Honorable Court:

As Your Honor aptly stated in his February 6, 2017 Order, "In Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981), the Supreme Court held that class counsel in Rule 23 class actions must be permitted to communicate with potential class members prior to class certification for the purpose of notification and information gathering. Id. at 101-02." Order, Doc. 36, p. 8. But, on August 22, 2016 Defendant objected to Plaintiff's discovery request for class member names and contact information citing California state law privacy concerns. As an initial matter, "…under Federal Rule of Civil Procedure 26(a)(1)(A) '[a] party must, without awaiting a discovery request, provide to the other parties … [t]he name and, if known, the address and telephone number of each individual likely to have discoverable information…" Stone v. Advance America, 2010 WL 2892501 *2 (S.D. Cal. 2010). Defendant cannot dispute that putative Class Members – who worked at Defendant's facilities – are likely to have discoverable information. Fed.R.Civ.P. 26(a)(1)(A) was enacted by the United States Congress. Defendant, citing California state law (*i.e., Belaire-West Landscape, Inc. v. Superior Court,* 149 Cal.App.4th 554 (2007)), cannot disregard an act of Congress in a federal tribunal. (Indeed, the Stone Court further stated that "[m]oreover, there is no requirement for any notice provision that would limit this very basic [Rule 26(a0)(1)(A)] discovery to which plaintiff is clearly entitled under our rules." Stone, 2010 WL 2892501 at * 2).

Despite this, Plaintiff's Counsel, during meet-and-confer efforts, agreed to a Belaire-West opt-out notice to redress Defendant's privacy objection, and counsel for Defendant also agreed. Specifically, during the December 21, 2016, telephonic conference between counsel for Defendant, Molly Kaban, and Counsel for Plaintiff, Cory Lee, (as confirmed by the below portion of the December 21, 2016, e-mail by Ms. Kaban) the Parties specifically addressed an opt-out notice procedure for class member contact information:

> **Putative Class Member Contact Information** – We discussed Sun-Maid's privacy objection to providing the contact information of putative class members. I restated Sun-Maid's objection to providing information as to employees who worked at facilities other than the Kingsburg facility. As to Kingsburg employees, I explained while normally I thought a protective order might suffice to address the privacy objection, here, I had additional concerns. Specifically, in the *Talavera v. Leprino Foods* case, I did not think Mr. Downey [Plaintiff's *pro hac vice* co-counsel in the Leprino Foods Matter] had complied with his obligations under the protective order to provide class members with certain admonitions when he initially contacted him. Thus, I was concerned that a protective order would not provide appropriate protection in this case either. Accordingly, I said Sun-Maid would be willing to provide the contact information for Kingsburg employees if an opt-out notice was first sent to employees. You agreed to consider this procedure, but stated that if you were willing to use an opt-out notice, it was your position that the discovery deadline would need to be extended. I said I would consider that if this was the agreed-upon procedure. We agreed to continue discussing this after the holidays.

12/21/2016 email from Kaban to Lee.

At that time, Defendant had **no objection** to providing the contact information for the Kingsburg employees, and the disputes centered on whether (1) Defendant would provide the contact information for employees at other facilities, and (2) whether Defendant would provide the contact information pursuant to a Protective Order or an opt-out notice. Since that time, the Court has ruled that Plaintiff is entitle to discovery covering all of Defendant's California facilities.

Moreover, Defendant, at no time prior to completing its portion of the February 2, 2017 Joint Discovery Conference Letter Brief, advised Plaintiff that it had changed or retracted its offer to provide the Kingsberg contact information via an opt-out notice. Dkt. no. 34, Section 3. Defendant's portion was completed AFTER Plaintiff had completed its portion, formally agreeing to the opt-out notice procedure.

## PLAINTIFF'S ARGUMENTS REGARDING DISCOVERY DISPUTES

### 1. *Belaire-West* Style Opt Out Procedure for Class Member Contact Information.

#### A. A *Belaire-West* Opt-Out Procedure for Rule 23 Class Member Contact Information is Appropriate Here

In its February 6, 2017 Order, this Court properly noted that "[c]ontact information on the putative class members is routinely allowed in precertification discovery. Coleman v. Jenny Craig, Inc., No. 11-CV-1301-MMA DHB, 2013 WL 2896884, at * 7 (S.D. Cal. June 12, 2013). A *Belaire-West* notice is an opt-out notice that is sent to potential Rule 23 class members to inform them of the lawsuit and explain that they can complete and return an enclosed postcard if they do not want to have their contact information sent to Plaintiffs' counsel. See B*elaire-West Landscape, Inc. v. Superior Court*, 149 Cal.App.4th 554, 557-58, 57 Cal. Rptr. 3d 197 (2007).

This process is separate and distinct from the FLSA Opt-in procedure in that it addresses Rule 23 putative class members (a group subject to a 4-year statute of limitations from the filing of the Rule 23 class action rather than the FLSA 3 year statute of limitations from the conditional certification, here the

Rule 23 class period is nearly 2 years longer than the FLSA period), does not require any decision by any class member whether they will participate in the Rule 23 class action by accepting a potential recovery (typically a Rule 23 class member may opt-out of any recovery at the approval stage of a settlement or after trial, while an FLSA class member essentially opts out if they do not return the FLSA opt-in notice), and only effects the disclosure of contact information to Plaintiff's counsel for the purposes of discovery. The FLSA Opt-In, meanwhile, makes the responding worker an identifiable party plaintiff to the lawsuit, see 29 U.S.C. § 216(b), rather than simply a class member following a named class representative as in a Rule 23 action. See 7B Wright, Miller, & Kane, Federal Practice and Procedure § 1807 at 474 n.13 (3d ed. 2005). Clearly, the anonymity of a Rule 23 class member is not equatable with the burden of becoming an identifiable party plaintiff after an FLSA Opt-in.

Ninth Circuit District Courts, including this Court, have approved of this opt-out procedure for the disclosure of class member contact information. See *Aldapa v. Fowler Packing Co.*, No. 1:15-cv-00420-DAD-SAB, 2016 U.S. Dist. LEXIS 35520, at *20 (E.D. Cal. Mar. 18, 2016) ("Plaintiffs' motion for approval of the *Belaire-West* opt-out notice is PARTIALLY GRANTED."); see also *Barreras v. Michaels Stores, Inc.*, No. C 12-4474 (PJH), 2015 U.S. Dist. LEXIS 54166, at *15 (N.D. Cal. Apr. 24, 2015); *Kilbourne v. Coca-Cola Co.*, No. 14cv984 MMA (BGS), 2015 U.S. Dist. LEXIS 178448, at *19 (S.D. Cal. Jan. 13, 2015).

Plaintiff seeks Defendant's compliance with the previously agreed-upon opt-out procedure despite Defendant's 11th hour tactical decision to repudiate the agreement between the Parties and refusal to produce any additional contact information, leaving Plaintiff with only contact information for the 142 FLSA opt-in class members, or about 2% of the class estimated to number in excess of 5,000 members.

**B. Plaintiff is entitled to Rule 23 Putative Class Member Contact Information For All Sun Maid Production Employees from January 21, 2011 to the Present**

For the purposes of discovery, Plaintiffs need only make a *prima facie* showing that the Rule 23 requirements are met, or that the discovery they seek is likely to produce substantiation of those requirements. *Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir. 1985). In keeping with this standard, courts permit pre-certification discovery on issues like typicality, commonality, and numerosity if it would substantiate the class allegations. *Vallabharpurapu v. Burger King Corp.*, 276 F.R.D. 611, 615 (N.D. Cal. 2011). Of major significance, this Court has already ruled that "[t]he allegations in the complaint are sufficient to state a prima facie case for class relief under Rule 23." Order, Doc. 36, p. 6.

As to class lists specifically, the Supreme Court in *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, (1978), explained: "We do not hold that class members' names and addresses never can be obtained under the discovery rules. There may be instances where this information would be relevant to issues that arise under Rule 23 ... or where a party has reason to believe that communication with some members of the class could yield information bearing on these or other issues.") *Oppenheimer*, 437 U.S. at 353 fn. 17 (1978). Indeed, class counsel in Rule 23 class actions must be allowed to communicate with potential class members for the purpose of notification and gathering information, even prior to class certification. See *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-02, (1981).

Plaintiffs' request for class list contact information is relevant to his claims of typicality, commonality and predominance.

Plaintiff has already offered *prima facie* evidence of typicality, commonality and predominance in his FLSA Motion: (1) Sun-Maid's GMP Program "applies to employees, temporary employees, contractors, visitors, growers, truck drivers and all other authorized personnel entering any of the production areas at any Sun-Maid facility" (see Docket No. 19.); (2) Sun-Maid's "New Employee GMP & Safety Orientation" required sanitary gear to be worn by all employees at Sun-Maid's facilities (Id.); (3) Sun-Maid's "Plant Employee Handbook of Company Policies" contains similar GMPs and Safety Policies pertaining to "all plant employees" regarding hair control, hand cleanliness, safety equipment, hearing protection, and eye protection (id.); and (4) Sun-Maid's "Sanitation Annual Refresher & MSDS Training 2015" requires similar personal protective gear for employees using sanitation chemicals (id.). Consistently, in its February 6 Order, this Court found that Plaintiff has adequately offered *prima facie* evidence that of the Rule 23 prerequisites and that he is entitled to discovery.

While decided under the conditional certification standard under the FLSA, the Court, in its March 18, 2016 Order Granting Plaintiff's Motion for Conditional Certification ("Conditional Certification Order"), recognized the issues of typicality, commonality and predominance presented here, noting that Sun Maid operates a main processing plant and three satellite processing plants, the Court conditionally certified a class including all nonexempt hourly employees at Defendant's food processing facilities in California. (See Conditional Certification Order at p.2:4-6, 18-20; 6:13.) In fact, the Court found that "the two declarations and documents submitted by plaintiff constitute more than 'unsupported assertions' and do show that plaintiff and potential class members "[may have been] together the victims of a single decision, policy, or plan. [citation]" (Id. at p.5:26-28.)

The Court's citation to Plaintiff's declarations is particularly noteworthy. In Plaintiff's FLSA Conditional Certification Motion, Dkt No. 19, he testified to the following:

- "Sun-Maid required me (and my co-workers) to put on my sanitary gear ("SG") and wash my hands before my paid shift started." (Dkt No. 19, Talavera Declaration, ¶ 4);
- "Before check-in, my co-workers and I were required to wait in line in order to get our required SG and to wash our hands." (Id. at ¶ 6);
- "I was not paid for any of the above work activities that I was required to perform before punching in. Thus, many days that I worked at Sun-Maid I worked over 8 hours, but was not paid time and a half for all time spent working beyond 8 hours." (Id. at ¶ 8);
- "Our meal breaks were uncompensated, but nevertheless I was required to perform work activities for which I was not paid, including donning and doffing of SG, waiting in line to wash my hands, time spent washing my hands and walking time. I estimate that I spent 8-10 minutes engaged in these activities during my uncompensated 30-minute meal break." (Id. at ¶ 11); and "Many days I worked at Sun-Maid I was only paid for working 8 hours when in fact I had worked over 8 hours. Thus, I was denied payment of all overtime pay on a regular basis." (Id. at ¶ 14).

Moreover, Plaintiff submitted the declaration of another Sun-Maid employee, Carlos Ochoa (Dkt. no. 19, Ochoa Declaration), who similarly stated:

- "Sun-Maid required me (and my co-workers) to put on my sanitary gear ("SG") and wash my hands before I punched in for my shift." (Id. at ¶ 3);
- "Before punching in, my co-workers and I were required to wait in line in order to get our required SG." (Id. at ¶ 4);
- "I was not paid for any of the above work activities that I was required to perform before punching in. Thus, many days that I worked at Sun-Maid I worked over 8 hours, but was not paid time and a half for all time spent working beyond 8 hours." (Id. at ¶ 7);
- "Our meal breaks were uncompensated, but nevertheless I was required to perform work activities for which I was not paid, including donning and doffing of SG, waiting in line to wash my hands, and time spent washing my hands. I estimate that I spent 7-10 minutes engaged in these activities during my uncompensated 30-minute meal break." (Id. at ¶ 10); and
- "Many days I worked at Sun-Maid I was only paid for working 8 hours when in fact I had worked over 8 hours. Thus, I was denied payment of all overtime pay on a regular basis." (Id. at ¶ 13).

No written policies stating these unlawful practices have thus far been produced in discovery. Plaintiff anticipates that all other putative class members may have shared similar or identical experiences, declarations or testimony by these class members would lend weight to Plaintiff's arguments regarding his typicality of the class, the commonality within the class, and the predominance of these issues. Moreover, Plaintiff expects additional evidence from the testimony of class members potentially evidencing a policy resulting in late, short or missed meal periods and rest periods and potential time rounding violations favoring the employer, all testimony which may corroborate violations likely found in time and pay records Plaintiff concurrently seeks.

In similar cases, courts have found such witness contact information necessarily discoverable. See *Kilbourne v. Coca-Cola* Co., No. 14cv984 MMA (BGS), 2015 U.S. Dist. LEXIS 178448, at *16 (S.D. Cal. Jan. 13, 2015) ("The Court finds that communication with some members of the putative class, as requested by Plaintiffs, could yield information substantiating this claim that the Shortrec routes provided by Defendants pressure its drivers to omit meal and rest breaks despite stated policies.") Indeed, Eastern District Courts have found class member contact information relevant and discoverable in wage and hour cases. "Courts in this circuit have made it clear that precertification disclosure of class members' contact information, such as names, addresses, telephone numbers, and email addresses, is routine practice in wage and hour class action litigation cases governed by Rule 23." *Salgado v. Land O' Lakes, Inc.*, No. 1:13-CV-0798-LJO-SMS, 2014 U.S. Dist. LEXIS 175158, at *28-29 (E.D. Cal. Dec. 17, 2014)(citing 10 District Court decisions within the 9th Circuit requiring discovery of class member contact information).

**2. Extension to the Fact Discovery Cut-Off**

Plaintiff requests a 120 day extension to the fact discovery cut-off deadline, currently set for February 10, 2017. The previously agreed-to *Belaire-West* Opt-out procedure entails (1) counsel negotiating the language of the opt-out notice (approximately 2-3 weeks) and translating that notice into Spanish, (2) simultaneously requesting bids from potential administrators who would execute the mailing (3) mailing the notice to the putative class members, (3) an opt-out period (typically lasting approximately 3-4 weeks from mailing, this Court ordered that all opt-outs be postmarked 21 days after the mailing to be valid in *Aldapa*, *supra*, at *15-20 which results in approximately 4 weeks for all opt-

outs to be received and processed), and (4) provision of the list of Rule 23 class action members who have not-opted out to having their contact information provided to counsel (approximately 1 week after close of the opt-out period).

This process could not begin until after the Court decided whether all Sun Maid production employees or only Sun Maid employees at Defendant's Kingsburg facility were subject to the mailing because the bids from potential administrators depends almost exclusively on the number of putative class members receiving the mailing. Consistent with the Court's February 6, Order Following Informal Discovery Dispute Conference, Dkt. No. 36, Plaintiff infers that if contact information were ordered produced, such production would include all Sun Maid facilities in California for the Rule 23 Class action statute of limitations. Pursuant to the FLSA Opt-In mailing, Defendant only provided contact information to the administrator for employees during the 3 year FLSA Statute of Limitations and Plaintiff only received the contact information for the 142 opt-ins.

For the foregoing reasons, Plaintiff respectfully requests an Order requiring the Belaire-West opt-out procedure for class member contact information for all production workers from January 21, 2011 to the present at and Sun Maid facility in California, and a 120 day extension to the fact discovery cut-off deadline to accommodate such a procedure and related follow-up discovery and investigation.

Very truly yours,

Cory G. Lee, Esq.

cc: Sandra Rappaport, Esquire (via ECF)