UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHON TALAVERA, on behalf of himself and on behalf all other similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>SUN-MAID GROWERS OF CALIFORNIA, a California Corporation,<br><br>Defendant. | No. 1:15-cv-00842-DAD-SAB<br><br>ORDER DENYING MOTION FOR PRELIMINARY APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT WITHOUT PREJUDICE TO A MOTION FOR FINAL APPROVAL<br><br>(Doc. No. 51) |

This matter is before the court on the parties' joint motion for preliminary approval of collective action settlement agreement, which was filed on July 16, 2018. (Doc. No. 51.) On September 5, 2018, that motion came before the court for hearing.[1] Attorney Corey Lee appeared on behalf of plaintiff Jonathon Talavera and attorney Molly Kaban appeared on behalf of defendant Sun-Maid Growers of California ("Sun-Maid"). At the hearing, the court directed the parties to submit supplemental briefing supported by declaration to address the court's concerns regarding the propriety of the proposed decertification of the conditionally certified Fair Labor Standards Act ("FLSA") collective and the proposed certification of a FLSA collective

---

[1] The court apologizes to the parties and to counsel for the court's lengthy delay in issuing this order.

1

consisting of a subset of the originally certified FLSA collective.  The court also directed that the parties provide additional evidence addressing whether the donning and doffing of protective gear was a union custom and practice under the relevant collective bargaining agreement.  After obtaining an extension of time to do so, on October 12, 2018, the parties filed their supplemental briefing and declaration.  (Doc. No. 56.)

Having considered the parties' briefing and having heard from counsel, for the reasons explained below, the court finds that the proposed settlement of this FLSA collective action is generally fair, reasonable and appropriate, but will nonetheless deny the joint motion for preliminarily approval because, in this standalone FLSA collective action, the proposed settlement should be the subject only of a motion for final court approval supported by detailed billing records sufficient to determine appropriate attorney's fees and costs under the lodestar method.

## BACKGROUND

On June 3, 2015, plaintiff commenced this action, asserting violation of the FLSA, 29 U.S.C. § 216(b), various California labor code and wage orders, and the California Unfair Business Practices Act, codified at Business and Professions Code §§ 17200, *et seq.* and alleging as follows.  (Doc. No. 1.)  Plaintiff was a temporary worker employed by Sun-Maid for a total of eighteen days in August and September of 2014.  (*Id.* at ¶ 9.)  According to plaintiff, defendant Sun-Maid required him to perform certain tasks—specifically, donning safety and sanitary gear and washing hands—for which he was not properly compensated.  (*Id.* at ¶ 14.)  Plaintiff claims that these practices constitute a violation of the FLSA because they resulted in him and other similarly situated employees working more than eight hours in a single day without receiving overtime compensation.  (*Id.* at ¶¶ 13–15, 91–92.)

On March 18, 2016, the court conditionally certified a collective consisting of:

> All individuals who are currently employed, or have formerly been employed, as nonexempt hourly employees at [d]efendants' food processing facilities in California, at any time within three years prior to the filing of the original complaint until resolution of this actions [sic].

(Doc. No 25 at 2, 6.)  This collective consisted of over 5,000 individuals with respect to the FLSA

claim. (Doc. No.51-3, Sandra Rappaport Decl., at ¶ 5.) On April 27, 2016, the court approved the form and manner of notice that was submitted to the putative collective. (Doc. No. 27; Rappaport Decl. at ¶ 6.) A neutral third-party administrator sent the notice to the putative collective and, by May 8, 2017, 142 individuals had opted in to the collective by filing consent forms. (Doc. No. 44; Rappaport Decl. at ¶ 6.) The 142 individuals included full-time Sun-Maid employees who were employed under the terms and conditions of collective bargaining agreements between various unions and Sun-Maid, as well as temporary workers like plaintiff, who were employed with temporary services agencies when they were assigned to work at Sun-Maid. (Doc. No. 51-2, Matthew Babiarz Decl, at ¶ 4.)

Thereafter, from June 2015 to June 2017, the parties engaged in formal discovery. (Rappaport Decl. at ¶ 7; Doc. No. 51-4, Corey Lee Decl. at ¶ 5.) On May 12, 2017, plaintiff filed notice with the court that he would not be moving for class certification under Federal Rule of Civil Procedure 23 with respect to any of the non-FLSA claims asserted, but would instead proceed only with the FLSA action and related individual claims. (Doc. No. 45.) The parties subsequently engaged in extensive settlement negotiations. (Rappaport Decl. at ¶ 9.)

In their joint motion for preliminary approval of settlement, the parties represent to the court as follows. As a result of investigation of the claims and defenses in this case, it was determined that eighty-seven of the 142 individuals who had opted in to the collective action are not similarly situated to plaintiff and should therefore be excluded from the parties' settlement. (*See* Doc. No. 51-1 at 7–9.) The parties thereby jointly request that the court: (1) decertify the originally conditionally certified collective; (2) dismiss without prejudice the claims of the eighty-seven individuals who are excluded from the parties' settlement; (3) conditionally certify for settlement purposes the agreed-upon collective of the remaining fifty-five individuals; and (4) dismiss with prejudice plaintiff's state-law based claims. (*Id.* at 9.)

In addition to the motions for decertification and conditional certification of a new collective, the parties also jointly seek approval of their settlement agreement. (Doc. No. 51.) That agreement proposes a maximum gross settlement amount of $58,000 to members of the collective and counsel. (Doc. No. 51-5, "Agreement," at 9.) This total amount is designated to

3

the following categories: (1) $9,000 for the fifty-five FLSA opt-in plaintiffs who worked at Sun-Maid since May 8, 2015, to be divided proportionally among the individuals according to the number of days that each worked; (2) $1,500 to plaintiff Talavera in consideration for the general release by him of claims against Sun-Maid; (3) an incentive award not to exceed $1,500 for plaintiff Talavera; and (4) up to $46,000 in attorneys' fees and costs to plaintiffs' counsel. (Agreement at 10.)

Below, the court will address the merits of the parties' joint motion for preliminary approval of their settlement.

## DISCUSSION

### A. The FLSA Collective

The FLSA establishes an opt-in collective action procedure for employees allegedly denied wages and overtime pay. 29 U.S.C. § 216(b). Under the FLSA, "an employee may bring a FLSA collective action on behalf of himself/herself and other employees who are 'similarly situated' . . .." *Millan v. Cascade Water Services, Inc.*, 310 F.R.D. 593, 607 (E.D. Cal. 2015.) Although the FLSA does not define the term "similarly situated," shortly after the hearing on the pending motion, the Ninth Circuit concluded that "[p]arty plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018).

In *Campbell*, the court also approved of the two-step approach, employed earlier in this case by the undersigned (Doc. No. 25 at 4), for determining whether a FLSA collective action may proceed. *Campbell*, 903 F.3d at 1110 ("[A]s a general rule, the two-step process, culminating in a decertification motion on or after the close of relevant discovery, has the advantage of ensuring early notice of plausible collective actions, then eliminating those whose promise is not borne out by the record."). In the first step, known as the notice stage, the plaintiff moves for preliminary certification and the district court applies a "lenient [standard] . . . loosely akin to a plausibility standard," with the analysis focused on a review of the pleadings but sometimes supplemented by declarations or limited other evidence. *Id.* at 1109; *see also Millan*,

4

310 F.R.D. at 607; *Lewis vs. Wells Fargo Co.*, 669 F. Supp. 2d 1124, 1127 (N.D. Cal. 2009). If granted, "preliminary certification results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." *Campbell*, 903 F.3d at 1109. In the second step, typically following discovery, the employer may move for decertification, showing the "similarly situated" requirement has not been satisfied and prompting the court to "take a more exacting look at the plaintiffs' allegations and the record." *Id.*

1. Decertification

In this case, the court previously conditionally certified a collective consisting of:

> All individuals who are currently employed, or have formerly been employed, as nonexempt hourly employees at [d]efendants' food processing facilities in California, at any time within three years prior to the filing of the original complaint until resolution of this actions [sic].

(Doc. No. 25 at 2.) As indicated above, although the collective described in this way was originally estimated to consist of over 5,000 individuals, only 142 individuals opted in to the collective after receiving notices and filing their consent forms. (Rappaport Decl. at ¶¶ 5–6.) After completing discovery, and for the purpose of settlement, the parties now move to decertify the conditionally certified collective in order to exclude eighty-seven of the 142 individuals who opted into the collective action but are not similarly situated to plaintiff. (Doc. No. 51-1 at 7.)

Specifically, according to the parties, of the eighty-seven individuals they have identified as not similarly situated to plaintiff, seventy-five fall into that category because they are employed under a collective bargaining agreement and not entitled to compensation under § 203(o) of the FLSA.[2] (*Id.* at 8.) Of those seventy-five individuals, seventy-two are members of the International Brotherhood of Teamsters ("Teamsters"), Local 431; two are members of International Association of Machinists & Aerospace Workers ("IAM"), Local Lodge 653; and one is a member of the International Brotherhood of Electrical Workers ("IBEW"), Local 100.

---

[2] Title 29, § 203(o) allows the parties to decide as part of a collective bargaining agreement that time spent changing clothes or washing at the beginning or end of each workday is noncompensable. *See Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 224 (2014).

5

1  (Babiarz Decl. at ¶ 5.)  According to the parties, the seventy-two Teamsters employees have
2  never been required to wear a uniform to work and the sanitary gear they do wear can be donned
3  anywhere, including at home.  (*Id.* at ¶ 6.)  The one IBEW and two IAM employees can choose to
4  wear their own clothes with sanitary gear or uniforms provided by Sun-Maid, which must be
5  donned and doffed at home.  (*Id.*)  All union employees are required to wash their hands.  (*Id.*)
6  The seventy-five union employees are not paid separately for de minimis time spent donning and
7  doffing sanitary gear and handwashing.  (*Id.* at ¶ 7.)  Instead, union workers receive extra wages
8  for other activities covered by their collective bargaining agreements and are thereby precluded
9  from compensation under § 203(o) of the FLSA.  (*Id.*)  Accordingly, the seventy-five union
10 employees are not similarly situated to plaintiff, a temporary worker who alleges that he was not
11 properly compensated for time spent donning safety and sanitary gear and handwashing.

12 Through discovery, the parties also learned that one of the opt-in members of the
13 collective action, Michael Reynolds, was in a non-union, office position that did not require any
14 donning or doffing of sanitary gear or handwashing.  (Babiarz Decl. at ¶ 8.)  Mr. Reynolds is
15 thereby not entitled to compensation for time spent donning safety and sanitary gear and
16 handwashing as alleged in plaintiffs' FLSA claim and is not similarly situated to plaintiff.

17 The parties report that the remaining eleven of the eighty-seven individuals identified as
18 not similarly situated to plaintiff fall into that category because their claims are time-barred.
19 (Babiarz Decl. at ¶ 9.)  Under the FLSA, individual plaintiffs in a collective action must file a
20 valid consent form to opt in to the action within the time provided by the applicable statute of
21 limitations.  29 U.S.C. § 256(b).  Normally, the statute of limitations for an FLSA violation claim
22 is two years, but if the violation is willful the statute of limitations is extended to three years.  29
23 U.S.C. § 255(a); *Flores v. City of San Gabriel*, 824 F.3d 809, 895 (9th Cir. 2016).  Here, the
24 parties agree that the applicable statute of limitations is two years and that the FLSA claims of the
25 eleven identified individuals are barred by that statute of limitations.  (Doc. No. 51-1 at 9.)  In this
26 regard, the members of the conditionally certified collective action filed their consent forms with
27 the court on May 8, 2017.  (Doc. No. 44.)  However, the eleven identified individuals did not
28 work at Sun-Maid after May 8, 2015, meaning that their consent forms were filed more than two

years following their last day of employment with Sun-Maid. (Babiarz Decl. at ¶ 9.) Accordingly, it appears the FLSA claims of these eleven individuals are time-barred under the FLSA and they are, thus, not similarly situated to plaintiff. *See Hallak v. L3 Commc'ns Corp.*, No. CV 10-00794 R (JCX), 2010 WL 11518537, at *1 (C.D. Cal. Apr. 27, 2010) (holding that plaintiffs' FLSA claims were time-barred based on their failure to opt-in to the collective action prior to the running of the two-year statute of limitations under the FLSA).

Under the two-tiered approach adopted by this court originally in this action, later approved by the Ninth Circuit in *Campbell,* now that the parties have completed discovery the court is in a position to be able to "take a more exacting look at the plaintiffs' allegations and the record" to determine whether the "similarly situated" requirement has been satisfied. *See Campbell*, 903 F.3d at 1109; *see also Bishop v. Petro-Chemical Transport*, 582 F. Supp. 2d 1290, 1294 (E.D. Cal. 2008) ("During this 'second stage' analysis, a court reviews several factors, including: '(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made the filings required by the ADEA before instituting suit.'") (quoting *Mooney v. Aramco*, 54 F.3d 1207, 1213 (5th Cir. 1996)). Here, the court agrees that further investigation and discovery in this action has uncovered evidence demonstrating that the "similarly situated" requirement has not been satisfied with respect to the eighty-seven individuals identified by the parties.[3] As such, and by agreement of the parties, the previously conditionally certified collective will be decertified. *Wallace v. City of San Jose*, No. 5:16-CV-04914-HRL, 2017 WL 6017867, at *7 (N.D. Cal. Dec. 5, 2017) (granting decertification of a conditionally certified FLSA collective action and allowing the action to proceed only on behalf of the three named plaintiffs). The claims of the eighty-seven individuals, as identified in Exhibit A of the declaration of Matthew Babiarz, will be severed from this action and dismissed without prejudice to their filing a separate action with respect to any such claim he or she may wish to pursue. (*See* Babiarz Decl, Ex. A.)

---

[3] Specifically, under the undisputed evidence before the court, the claims of the eighty-seven individuals identified by the parties are barred. *See Campbell*, 903 F.3d at 1119–21.

2. <u>Certification</u>

Nonetheless, for the purpose of settlement, the parties now seek the certification of a new, narrower collective comprised of the remaining fifty-five of the 142 individuals who originally opted in to this collective action. (Doc. No. 51-1 at 9.) Because this new collective "is composed entirely of members of the [previously] conditionally certified [collective]," the court finds that the remaining fifty-five members of the collective are "similarly situated"[4] to plaintiff without the need for further certification analysis. *Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2015 WL 4076620, at *4 (N.D. Cal. July 2, 2015), *modified*, No. 12-CV-05524-JST, 2016 WL 304747 (N.D. Cal. Jan. 26, 2016). Likewise, because the parties do not dispute that these remaining fifty-five members of the collective are similarly situated to plaintiff and seek to settle their claims, no further decertification analysis is necessary. *Millan*, 310 F.R.D. at 607 ("Absent an argument that the parties are not similarly situated, this Court need not look to the second step at all.").

Accordingly, the court will grant conditional certification of the agreed upon collective set forth in Exhibit B to the declaration of Matthew Babiarz. (*See* Babiarz Decl., Ex. B.)

**B.     The Settlement Agreement**

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013). Because an employee cannot waive claims under the FLSA, they may not be settled without supervision of either the Secretary of Labor or a district court. *See Barrentine v. Ark.–Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981); *Kerzich v. County of Tuolumne*, No. 1:16-cv-

---

[4] In assessing whether the "similarly situated" requirement was met to conditionally certify the collective as originally proposed, this court determined that plaintiff had provided adequate evidentiary support to meet his burden at the notice stage and established that potential collective members were subject to a single illegal, plan or decision. (*See* Doc. No. 25.) As it turns out, the court employed a more demanding standard than that subsequently determined to be appropriate by the Ninth Circuit for certification of a FLSA collective action. *See Campbell*, 903 F.3d at 1114–16 ("If the party plaintiffs' factual or legal similarities are material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment.") Nonetheless, if the collective was appropriately certified under that more stringent standard, it would appear to be appropriately certified under the lower bar set by the Ninth Circuit in *Campbell* for determining whether such plaintiffs are "similarly situated." *Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d 918, 948 (9th Cir. 2019) (affirming the district court's certification of the FLSA collective which applied the approach later rejected by the court in *Campbell*).

01116-DAD-SAB, 2019 WL 1755496, at *2 (E.D. Cal. Apr. 19, 2019); *Yue Zhou v. Wang's Restaurant*, No. 05-cv-0279 PVT, 2007 WL 2298046, at *1 n.1 (N.D. Cal. Aug. 8, 2007). Thus, absent supervision by the Secretary of Labor, settlement of collective action claims under the FLSA requires court approval. *See Jones v. Agilysys, Inc.*, No. C 12–03516 SBA, 2014 WL 108420, at *2 (N.D. Cal. Jan. 10, 2014*); see also Dashiell v. County of Riverside*, No. EDCV 15-00211 JGB (SPx), 2018 WL 3629915, at *3 (C.D. Cal. July 19, 2018). The Ninth Circuit has not established criteria for district courts to consider in determining whether a FLSA settlement should be approved. *Dunn v. Teachers Ins. & Annuity Ass'n of Am.*, No. 13-CV-05456-HSG, 2016 WL 153266, at *3 (N.D. Cal. Jan. 13, 2016). However, district courts in this circuit have frequently applied the widely-used standard adopted by the Eleventh Circuit, which looks to whether the settlement is a fair and reasonable resolution of a bona fide dispute. *Id.*; *see also Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982); *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1333 (N.D. Cal. 2014); *Yue Zhou*, 2007 WL 2298046, at *1.

Once it is established that there is a bona fide dispute, district courts often apply the Rule 23 factors for assessing proposed class action settlements when evaluating the fairness of an FLSA settlement, while recognizing that some of those factors do not apply because of the inherent differences between class actions and FLSA actions.[5] *Khanna v. Inter-Con Sec. Sys., Inc.*, No. CIV S-09-2214 KJM, 2013 WL 1193485, at *2 (E.D. Cal. Mar. 22, 2013). To determine whether the proposed FLSA settlement is fair, adequate, and reasonable, district courts in this circuit have balanced factors such as:

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining [collective] action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the [collective plaintiffs] to the proposed settlement.

*Khanna v. Intercon Sec. Sys., Inc.*, No. 2:09-CV-2214 KJM EFB, 2014 WL 1379861, at *6 (E.D.

---

[5] The court is mindful of the Ninth Circuit's instruction that "mimicking the Rule 23 standards in evaluating section 216(b) collective actions is not appropriate." *Campbell*, 903 F.3d at 1113.

9

Cal. Apr. 8, 2014), *order corrected*, 2015 WL 925707 (E.D. Cal. Mar. 3, 2015); *see also Pataky v. Brigantine, Inc.,* No. 3:17-cv-352 GPC (AGS), 2019 WL 183583, at *6 (S.D. Cal. Jan. 14, 2019) (approving settlement of a FLSA collective action settlement under the "reasonable compromise" standard which is satisfied if the settlement "passes muster under Rule 23 analysis"); *Almodova v. City & County of Honolulu*, Civil No. 07–00378 DAE–LEK, 2010 WL 1372298, at *4 (D. Haw. Mar. 31, 2010), *recommendations adopted by* 2010 WL 1644971 (D. Haw. Apr. 20, 2010) (adopting class action settlement factors in evaluating a FLSA collective action settlement even though some of those factors will not apply). District courts in this circuit have also taken note of the "unique importance of the substantive labor rights involved" in settling FLSA actions and adopted a "totality of circumstances approach that emphasizes the context of the case." *Selk*, 159 F. Supp. 3d at 1173. With this approach, a "district court must ultimately be satisfied that the settlement's overall effect is to vindicate, rather than frustrate, the purposes of the FLSA." *Id*. Settlements that reflect a fair and reasonable compromise of issues in dispute may be approved to promote the efficiency of encouraging settlement of litigation. *McKeen-Chaplin v. Franklin Am. Mortg. Co.*, No. C 10-5243 SBA, 2012 WL 6629608, at *2 (N.D. Cal. Dec. 19, 2012).

### 1. <u>Bona Fide Disputes</u>

"A bona fide dispute exists when there are legitimate questions about the existence and extent of Defendant's FLSA liability." *Kerzich v. County of Tuolomne*, 335 F. Supp.3d 1179, 1184 (E.D. Cal. 2018) (quoting *Selk*, 159 F. Supp. 3d at 1172). A court will not approve a settlement of an action in which there is certainty that the FLSA entitles plaintiffs to the compensation they seek, because to do so would shield employers from the full cost of complying with the statute. *Selk*, 159 F. Supp. 3d at 1172; *see also Dashiell*, 2018 WL 3629915, at *3 ("The reason for this requirement is to safeguard against an employee waiving his or her claims for wages, overtime compensation, or liquidated damages when there is no actual dispute between the parties.").

Here, the parties disagree about Sun-Maid's liability. (*See* Doc. No. 51-1 at 10.) Plaintiff claims that Sun-Maid violated the FLSA through its practice of requiring him and similarly

situated employees to don and doff safety and sanitary gear and wash their hands without proper compensation. (Compl. at ¶¶ 13–15, 91–92.)  Sun-Maid, however, denies any wrongdoing with respect to the treatment of the collective as alleged in the complaint. (Rappaport Decl. at ¶ 4.) Sun-Maid contends that it has always complied with all applicable laws and regulations, including the FLSA. (*Id.*)  Sun-Maid further argues that evidence exchanged in discovery suggests that plaintiffs who will receive compensation under the settlement will do so despite their donning and doffing of protective sanitary gear and washing of hands while on the clock. (Doc. No. 51-1 at 10.)  Finally, Sun-Maid denies that plaintiffs' claims are appropriate for collective action treatment for purpose other than settlement. (*Id.*)  Because Sun-Maid contests its liability as a factual matter under the FLSA as alleged by plaintiff, the court is satisfied that there is a bona fide dispute at issue here. *See Castro v. Paragon Industries, Inc*., No. 1:19-cv-00755-DAD-SKO, 2020 WL 1984240, at \*12 (E.D. Cal. Apr. 27, 2020) (bona fide dispute found where defendant contended it had complied with the FLSA's minimum wage and overtime compensation requirements) (and cases cited therein).

### 2. The Proposed Settlement is Fair and Reasonable

To determine whether a FLSA settlement is fair and reasonable, the court evaluates the "totality of the circumstances" within the context of the purposes of the FLSA.  *Slezak v. City of Palo Alto*, No. 16-cv-03224-LHK, 2017 WL 2688224, at \*3 (N.D. Cal. June 22, 2017).  Courts in this circuit have considered the following factors when determining whether a settlement is fair and reasonable under the FLSA:  (1) the plaintiffs' range of possible recovery; (2) the stage of proceedings and amount of discovery completed; (3) the seriousness of the litigation risks faced by the parties; (4) the scope of any release provision in the settlement agreement; (5) the experience and views of counsel and the opinion of participating plaintiffs; and (6) the possibility of fraud or collusion. *See Selk*, 159 F. Supp. 3d at 1173; *Slezak*, 2017 WL 2688224, at \*3; *Roberts v. City of Chula Vista*, No. 16-cv-1955-MMA-DHB, 2017 WL 6541105, at \*2 (S.D. Cal. Dec. 21, 2017).  The court addresses each of these factors below.

/////

/////

*a. Plaintiffs' Range of Possible Recovery*

Under the terms of the proposed settlement agreement, Sun-Maid will pay plaintiffs a total sum of $9,000.00 for their FLSA claims. (Agreement at 9.) While this works out to an average of $163.64 per plaintiff, the distribution to the collective will actually be divided proportionally among the fifty-five individuals based on the number of days that each worked. (*Id.* at 10.) The parties inform the court that the $9,000 award represents over 100 percent of plaintiffs' unpaid time under the FLSA. (Lee Decl. at ¶ 11.) Under these circumstances, the court find that consideration of this factor weighs in favor of approving the Settlement Agreement.

*b. The Stage of the Proceedings and the Amount of Discovery Completed*

The court is also required to evaluate the stage of the proceedings and the amount of discovery completed to ensure that "the parties carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014). This factor will weigh in favor of approval if the parties have sufficient information to make an informed decision regarding settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, the parties have gathered sufficient information to make an informed decision regarding settlement. Formal discovery conducted by the parties spanned a two-year period. (Rappaport Decl. at ¶ 7; Lee Decl. at ¶ 5.) During this time, Sun-Maid provided plaintiff over 1,000 documents, including time and pay policies and records pertaining to plaintiff and the putative collective members. (*Id.*) The parties also took the deposition of Sun-Maid Human Resource Manager Matt Babiarz, Sun-Maid Production Supervisor George Chavez, and plaintiff Talavera. (Rappaport Decl. at ¶ 7; Lee Decl. at ¶ 5.) Throughout the course of litigation, the parties have conducted a thorough investigation of the claims and defenses in this case. (Rappaport Decl. at ¶ 10; Lee Decl. at ¶ 7.) Under these circumstances, the court finds that the parties had sufficient information to reach an appropriate settlement.

*c. The Seriousness of the Litigation Risks Faced by the Parties*

Courts favor settlement where "there is a significant risk that litigation might result in a lesser recover[y] for the [collective] or no recovery at all." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015). As discussed above, Sun-Maid disputes its liability with

respect to plaintiffs' FLSA claims.  If this case were to proceed to trial, plaintiffs' recovery for their FLSA claims would be uncertain and the collective might not receive the amount allocated under the proposed settlement agreement, which provides them with the complete relief available to them under the FLSA.  The court finds that it is likely that prolonging this litigation would generate needless litigation for both sides, and that the parties will likely benefit financially by settling this action now.  Accordingly, consideration of this factor weighs in favor of approval of the parties' Settlement Agreement.

*d. The Scope of Any Release Provision in the Settlement Agreement*

"A FLSA release should not go beyond the specific FLSA claims at issue in the lawsuit itself." *Slezak*, 2017 WL 2688224, at *5.  Expansive release of claims would allow employers to unfairly extract valuable concessions from employees using wages that they are guaranteed by statute. *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010) ("An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled."). Courts are therefore hesitant to approve settlement agreements that release claims that are not directly related to the allegations brought in the case. *See Daniels v. Aeropostale W., Inc.*, No. C 12-05755 WHA, 2014 WL 2215708, at *4 (N.D. Cal. May 29, 2014) (rejecting proposed FLSA settlement in which sixty percent of collective-action opt-in members did not receive any payment in exchange for a release provision that extended beyond the FLSA limits of the case); *McKeen–Chaplin,* 2012 WL 6629608, at *5 (rejecting a FLSA settlement in part because the release provision exceeded the breadth of allegations in the action and released unrelated claims that plaintiffs may have against defendants).

Here, the release provision for the collective is limited to "all claims of any kind under the Fair Labor Standards Act" against Sun-Maid "based on any act or omission that occurred at any time up to and including the final effective date, in any way related to any of the facts or claims alleged in this litigation or by any reason of the negotiations leading to this settlement, even if presently unknown and/or unasserted." (Agreement at 12.)  As such, the scope of the release provisions in the proposed settlement agreement appropriately track the breadth of plaintiffs'

13

FLSA claims. *McManus v. City of Ceres*, No. 1:17-cv-00355-DAD-BAM, 2018 WL 4262126, at *5 (E.D. Cal. Sept. 6, 2018); *Beidleman*, 2018 WL 1305713, at *5. Consideration of this factor therefore also weighs in favor of approval of the Settlement Agreement.

In addition to the release provision for the collective, the proposed settlement agreement also includes a broader general release provision whereby plaintiff Talavera releases Sun-Maid from:

> "any and all claims . . . liabilities, obligations, promises, grievances, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts and expenses . . . of any nature whatsoever, known or unknown, anticipated or unanticipated, suspected or unsuspected, disclosed or undisclosed, fixed or contingent . . . which plaintiff may now have or have ever had against defendant . . . on or before the final effective date of this settlement agreement. This includes but is not limited to claims of retaliation, harassment, discrimination, unequal pay, and wrongful termination of any kind under federal or state law . . . and any claims under the law of contract and tort but excluding any claims that cannot lawfully be released by private agreement.
>
> Plaintiff also expressly waives any and all provisions, rights and benefits conferred by any law or principle of common law or equity, that are similar, comparable, or equivalent, in whole or in part, to California Civil Code Section 1542. Plaintiff expressly acknowledges that the release given in this Agreement is intended to include in its effect, without limitation, claims that he did not know or suspect to exist in his favor at the time of the final effective date of this settlement agreement . . . . Plaintiff expressly waives the provision of Section 1542 of the California Civil Code . . . . In exchange for executing a Section 1542 global release and dismissing the law suit with prejudice, plaintiff shall be paid the gross sum of $1,500.

(Agreement at 12–14.)

Although this general release extends beyond the FLSA claims at issue in this action to include any claim plaintiff Talavera may have against Sun-Maid, the separate payment of $1,500 (in a case where the average award to the collective would be less than $165 per individual) in exchange for that general release renders it permissible. *See Selk v. Pioneers Mem. Healthcare Dist.*, 159 F.Supp. 3d 1164, 1179 (S.D. Cal. 2016) ("Courts are less skeptical of a broad release of claims when the employee receives independent compensation from the employer as consideration for the release."); *but see Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2014 WL 1477630, at *7 (N.D. Cal. Apr. 15, 2014) (rejecting proposed FLSA settlement that required

the representative plaintiffs to release claims based on "all matters in law, in equity, in contract, or in tort, or pursuant to statute"; "[t]he unlimited scope of the release provision is 'improper'") (citation omitted).  Under these circumstances, the court finds that the general release of claims by plaintiff Talavera in exchange for additional compensation does not preclude a finding that the proposed Settlement Agreement is fair and reasonable.

### *e. The Experience and Views of Counsel and the Opinion of Participating Plaintiffs*

In determining whether a settlement is fair and reasonable, "[t]he opinions of counsel should be given considerable weight both because of counsel's familiarity with th[e] litigation and previous experience with cases." *Larsen v. Trader Joe's Co.*, No. 11-cv-05188-WHO, 2014 WL 3404531, *5 (N.D. Cal. July 11, 2014).  Here, counsel for both parties state that they are experienced in wage and hour class litigation and have thoroughly investigated the claims and defenses in this case to reach the proposed settlement agreement.  (Rappaport Decl. at ¶ 10; Lee Decl. at ¶ 6.)  Attorney Cory Lee also represents that, based on the defenses Sun-Maid could have raised after discovery, plaintiffs would likely not obtain a better outcome if they were to litigate and prevail on their FLSA claims.  (Lee Decl. at ¶¶ 11, 13–15.)  Therefore, consideration of this factor weighs in favor of approval of the Settlement Agreement.

### *f. The Possibility of Fraud or Collusion*

As will be discussed further below, plaintiffs' counsel have requested an award of up to $46,000 for attorneys' fees and costs which would be a high percentage of the total settlement amount of $58,000.  (Doc. No. 51-1 at 11.)   Nonetheless, there is no indication that this settlement was the product of fraud or collusion.  The parties engaged in lengthy litigation including extensive discovery before reaching this proposed resolution.  While the fees sought by counsel are large relative to the size of the settlement, those attorneys' fees will not diminish the settlement payments to members of this collective action.  *See Selk*, 159 F. Supp. 3d at 1179-80 ("[T]he amount of the individual settlement payments to be received by opt-in members is based on an analysis of employee time records and an estimate of the degree of under-compensation during the relevant period.  This approach guards against the arbitrariness that might suggest

collusion.") (citation omitted). Consideration of this factor therefore also weighs in favor of approval.

### 3. Incentive Award

At its discretion, a district court may award incentive payments to named plaintiffs in FLSA collective actions to compensate them for work completed on behalf of the collective. *See Selk*, 159 F. Supp. 3d at 1181 (discussing FLSA collective action cases); *Dudley v. TrueCoverage LLC*, No. CV 18-3760 PA (AGRx), 2019 WL 3099661, at *5 (C.D. Cal. Mar. 22, 2019). "In reviewing whether an incentive award is appropriate, the court should consider, among other things, 'the actions the plaintiff has taken to protect the interests of the [collective], the degree to which the [collective] has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Dudley*, 2019 WL 3099661, at *5 (quoting Selk, 159 F. Supp. 3d at 1181). Such incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant reputational risk by bringing suit against his or her former employers. *Rodriguez*, 563 F.3d at 958–59.

The Ninth Circuit has emphasized, however, that "district courts must be vigilant in scrutinizing all incentive awards." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (internal quotation marks and citation omitted); *see also Selk*, 159 F. Supp.3d at 1181 (scrutinizing incentive payments in FLSA collective actions is appropriate to ensure that the prospect of a large incentive payment did not influence the named plaintiff to the detriment of the collective).

Here, plaintiff Talavera will receive an incentive payment not to exceed $1,500 under the proposed settlement. (Agreement at 10.) This equates to roughly 2.6 percent of the total settlement fund of $58,000, which is less than other incentive awards previously approved by this court. *See, e.g.*, *Wagner v. Cty. of Inyo,* No. 1:17-cv-00969-DAD-JLT, 2018 WL 5099761, at *7 (E.D. Cal. Oct. 18, 2018) (awarding each named plaintiff in a FLSA collective action $500 for a total of $1000, equivalent to seven percent of the total settlement fund). At first blush, plaintiff Talavera's recovery may appear to be somewhat out of proportion to that of the other plaintiffs, who will receive an average of $163.64. However, counsel has represented to the court that

16

plaintiff Talavera provided a great deal of assistance in prosecuting this case, testified at deposition, and secured a recovery in excess of 100 percent for plaintiffs' unpaid work time under the FLSA. (Lee Decl. at ¶¶ 10–11.) Moreover, this incentive award will not diminish the amount of the payments to be received by the fifty-five collective members who will be compensated fully based on the number of days that each worked. Considering these factors, the court will approve an incentive award to plaintiff Talavera in the amount of $1,500.

### 4. Attorneys' Fees and Costs

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award." *Selk*, 159 F. Supp. 3d at 1180; *see also* 29 U.S.C. § 216(b) (providing that, in a FLSA action, the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). "Typically, attorneys' fees under the FLSA are determined using the lodestar method . . . . Lodestar amounts are presumed to be reasonable." *Kerzich*, 335 F. Supp. 3d at 1185-86 (collecting cases); *see also Dudley*, 2019 WL 3099661, at *6.

According to the terms of the proposed settlement, Sun-Maid will not oppose an award to plaintiffs' counsel in an amount that does not exceed a total of $46,000 in attorneys' fees, expenses, and costs, which represents approximately $30,000 in costs and $16,000 in fees. (Doc. No. 51-1 at 11.) "Should the court approve a lesser amount of fees, expenses and costs, the unapproved portion or portions shall transfer to the settlement class and shall be distributed to members of the settlement class proportionally." (*Id.*) Under the proposed settlement, plaintiffs will receive $9,000, for a total recovery of $58,000. (*Id.* at 10.) As such, the maximum allocation for attorneys' fees and costs would represent roughly seventy-nine percent of the total settlement amount. While that percentage in attorneys' fees would be of concern in a class action involving a common fund settlement or even a hybrid class and collective action, such is not the case here where the action is a standalone FLSA collective action. That is because "the fee-shifting provisions of the FLSA are intended to allow plaintiffs to find competent counsel if legal action is required to compel the employer to pay what is owed, because if the plaintiffs' claims are meritorious, counsel will be able to obtain its fees from defendants regardless of the size of the

claims . . . ." *Kerzich*, 335 F.Supp.3d at 1188; *see also Dudley,* 2019 WL 3099661, at *6 (granting approval of a FLSA collective action including attorneys' fees and costs making up over sixty-six percent of the total settlement amount, observing that "[w]hile the amount requested is a large portion of the settlement fund, counsel's fees would not reduce the payments to the Collective members"); *Alvarez v. 894 Pizza Corp.*, No. 14-CV-6011 (JBW), 2016 WL 4536574, at *5 (E.D.N.Y. Aug. 2, 2016) (finding the FLSA's fee-shifting provision "guarantees that employees are not prevented from asserting their rights by an inability to retain competent counsel or the small size of their claims"); *Dominguez v. Quigley's Irish Pub, Inc.*, 897 F.Supp.2d 674, 687 (N.D. Ill. 2012) (noting the purpose of the FLSA's fee shifting statute "is to enable smaller claims to be litigated"); *Williams v. R.W. Cannon, Inc*., 657 F.Supp.2d 1302, 1314 (S.D. Fla. 2009) ("[T]he intent of the fee-shifting provision of the FLSA [is to] ensur[e] that individuals with relatively small claims may effectively enforc[e] their rights and protect[ ] the interest of the public.") (internal quotations omitted).[6]

However, in the pending motion, plaintiffs' counsel has only represented in summary fashion that he expended 260 hours in litigating this action. (Lee Decl. at ¶ 12.) Because counsel's ordinary billing rate for the Eastern District of California market is $450 per hour, a discount from the $685 per hour that he ordinarily charges as an attorney with seventeen years of experience, counsel contends that his requested fee has already been significantly reduced. (*Id.*) The court does not take issue with counsel's requested fee award[7] but will require that he submit

/////

---

[6] Not all district courts have followed this approach, and some have rejected attorneys' fee requests in granting final approval of settlements in standalone FLSA collective actions based, at least in part, upon a finding that the proposed attorneys' fees award made up too large a percentage of the total settlement amount. *See Gonzalez-Rodriguez v. Mariana's Enterprise, et al.*, No. 2:15-cv-00152-JCM-PAL, 2016 WL 3869870, at *6-10 (D. Nev. July 14, 2016) (granting final approval of a FLSA settlement in part and reducing the attorneys' fees from the $59,614 requested to $22,500 because the requested amount was sixty-six percent of the total settlement and the documentation submitted was insufficient for an accurate lodestar calculation).

[7] This court has previously accepted as reasonable for lodestar purposes hourly rates between $370 and $495 for associates, and between $545 and $695 for senior counsel and partners. *See Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13–cv–00474–DAD–BAM, 2017 WL 749018, at *8 (E.D. Cal. Feb. 27, 2017).

1   with the motion for final approval of settlement detailed billing records supporting the claimed
2   lodestar calculation.

3                   5.   <u>The Parties' Additional Requests</u>

4         In their pending joint motion for preliminary approval, the parties also request that the
5   court:  (1) authorize a second notice mailing to the certified settlement collective; (2) appoint
6   plaintiff Talavera as class representative; (3) appoint class counsel for the settlement class; (4) set
7   a date for a filing of objections or withdrawing from the settlement; and (5) schedule a fairness
8   hearing for final approval of the Settlement Agreement.  (*See* Doc. No. 51-1 at 5; Agreement at
9   15.)

10         As noted above, shortly after the hearing in this matter, the Ninth Circuit issued its
11   decision in *Campbell* in which the court instructed that "mimicking the Rule 23 standards" in
12   FLSA collective actions "is not appropriate." 903 F.3d at 1113.  The problem here is that the
13   parties have anticipated a staged class action settlement approval procedure in this collective
14   action where no such procedure is called for.  First, the fifty-five members of the collective have
15   joined this action as plaintiffs by filing consent forms after being provided notice.  (*See* Doc. No.
16   44.)  Accordingly, the mailing of a second notice is unnecessary.  Second, because this is not a
17   class action, it would be inappropriate to appoint plaintiff Talavera as class representative, just as
18   it would be inappropriate to appoint plaintiff's counsel as class counsel as has been requested.
19   The court also declines to hold a final fairness hearing, a hearing typically held in class actions
20   after a class has been certified and a class action settlement has been preliminarily approved.  *See*
21   *Goodwin v. Winn Mgmt. Grp. LLC*, No. 1:15-cv-00606-DAD-EPG, 2017 WL 3173006, at *3
22   (E.D. Cal. July 26, 2017).

23         Plaintiff's counsel represents the now remaining plaintiffs in this collective action.  They
24   presumably have advised their clients of this settlement and its terms and have been authorized to
25   settle the case on those terms.  If for any reason they have not done so, counsel for plaintiff
26   /////
27   /////
28   /////

should do so immediately.[8] Counsel should then move for court approval of the settlement agreement, supported by declaration(s) advising the court that each of the remaining plaintiffs has agreed to the settlement or requested that they be dismissed from this action without prejudice to pursuing their claims on an individual basis. The motion for final approval should also include an attorneys' fees application with sufficiently detailed billing records to allow the court to confirm the lodestar calculation of attorneys' fees requested, as well as to verify the costs reasonably expended to litigate this action. Based upon the analysis set forth above, it is likely that as long as the additional information submitted by counsel in the motion for final approval raises no issues, final approval of the parties' settlement would then be granted.

## CONCLUSION

For the reasons explained above,

1. The previously conditionally certified collective is decertified;
2. The claims of the eighty-seven individuals who are not similarly situated to plaintiff Talavera are dismissed without prejudice;
3. The settlement collective comprised of fifty-five members is conditionally certified;
4. The parties' joint motion for preliminary approval of FLSA collective action settlement (Doc. No. 51) is denied without prejudice to the filing of a motion for final approval of settlement accompanied by an application for attorneys' fees and costs; and
5. The motion for final approval of settlement shall be filed within 30 days of the date of this order unless that time is extended by further order of the court.

IT IS SO ORDERED.

Dated: **May 5, 2020**

UNITED STATES DISTRICT JUDGE

---

[8] The court also directs the parties to modify their settlement agreement, attached as Exhibit E to the pending joint motion, to remove all references to a "certified class" or "class action" and refer to plaintiffs as a collective and this action as a collective one.